IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CRIMINAL DOCKET NO.: 5:01CR33-RLV

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **O R D E R** |
| | ) | |
| CHRISTOPHER WAYNE BOWMAN, | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court upon Defendant Christopher Wayne Bowman's "Pro Se Petition For Change Of Committed Name," filed November 5, 2012, the accompanying Declaration of the Defendant-Petitioner, and related attachments. (Doc. 191) Defendant also filed a "Motion To Expedite" on December 26, 2012. (Doc. 192).

On April 14, 2013, Defendant moved for issuance of a Writ of Mandamus in the Fourth Circuit Court of Appeals, asking the appellate court to direct this district court to rule on Defendant's motion for a name change. (Doc. 194 / COA No.: 13-1501).

On May 14, 2013, Defendant filed a second "Pro Se Petition For Change Of Committed Name," which is nearly identical to his original motion. (Doc. 195).

Defendant is currently serving a 360-month sentence.[1] (Doc. 118).

The Court begins by acknowledging the following general principles:

> First, convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison. Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.
> Second, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid

---

[1] Final judgment was entered on March 11, 2003. (Doc. 118).

penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security.

*Ali v. Dixon*, 912 F.2d 86, 88-89 (4th Cir. 1990) (evaluating prisoner's constitutional challenge to state correction facility's committed name policy; finding prisoner's claim that prison trust funds could only be accessed by making request in his committed name cognizable under First Amendment) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)) (citations omitted). In other words, "A restriction on prisoners' religious expression will not be deemed unconstitutional if the restriction is necessary to safeguard legitimate institutional and penological interests." *Barrett v. Virginia*, 689 F.2d 498, 501 (4th Cir.1982) (citing *Sweet v. S.Carolina Dep't of Corrections*, 529 F.2d 854 (4th Cir. 1975) (en banc)). "[M]oreover, correctional officials' appraisal of those interests command great deference on the part of the courts." *Id*.

Here, Defendant does not directly challenge BOP's committed name policy as unconstitutional. In his filing, Defendant identifies himself as a recent convert to "Al-Islam" seeking to be recognized by his newly adopted Muslim name, "Hamzah Abdullah Ibn-Dawud As-Salafi." (Motion, 1). Contending that his current name is offensive to his Islamic beliefs, Defendant asks this Court to change his "committed name" from Christopher Wayne Bowman to "Hamzah Abdullah Ibn-Dawud As-Salafi."[2] (Motion, ¶¶ 2, 4). According to Defendant, in

---

[2] However, if allowed (and a true substitution of names were permitted), the name change would effectively undermine BOP's "Committed Name Policy." According to documentation proffered by the Defendant:

> The name listed on [a prisoner's] Judgment and Commitment Order is [his] officially committed name. All legal transactions during [a prisoner's] commitment period will be handled with the use of the name on the Judgment and Commitment Order, even if incorrect. Should [a prisoner] wish to correct [his] committed name, [he] must contact the sentencing court and have them issue a name change. This action must be initiated by [the prisoner].

order to have his Islam name officially recognized by the Bureau of Prisons, he needs a federal court order to effect the desired name change on his Judgment & Commitment Order ("J & C").[3] (Doc. 191 / Exhs. A - D). Significantly, the official "committed name" is to be used for all legal transactions concerning the prisoner. (Exh. D).

Defendant primarily relies on *Salaam v. Lockhart,* an Eighth Circuit case that considered the significance of a personal name chosen because of religious motives.[4] *See e.g., Salaam v. Lockhart*, 905 F.2d 1168, 1170 (8th Cir.1990). Prior to litigation, Salaam had already taken appropriate measures under state law to have his name legally changed to his Islamic name. The prison system resisted recognizing Salaam's new Islamic name based upon "the state's interest in security and administrative efficiency." *Salaam*, 905 F.2d at 1170. Undertaking to strike a balance between the state prison's administrative needs and the constitutional rights of prisoners, the Eighth Circuit held that Arkansas's penal system was required to allow Plaintiff Salaam to receive mail via his new legal (Islamic) name. *Salaam*, 905 F.2d at 1170. The court reasoned that the readily available alternative of using both the committed and the legal (Islamic) names for certain purposes – "the a/k/a alternative" - presented a minimal burden and, therefore,

---

(Motion, Exh. D). Although Defendant seeks relief in his now closed criminal case, these types of issues have generated civil litigation in federal courts across the country.

[3] For example, Defendant refers the Court to the Federal Bureau of Prisons website, namely, the Inmate Systems Management Manual, which reportedly reads:

> The name entered on the J & C Order is to be considered the committed name to be used by the inmate, as well as the Bureau of Prisons. SENTRY must reflect the committed name, which may only be changed by federal court order.

(Doc. 191 / Exh. A).

[4] *Salaam* explains that "[t]he adoption of Muslim names by inmates practicing that religion is generally recognized to be an exercise of both first amendment speech and religious freedom." *Salaam*, 905 F.2d at 1170 n. 4 (internal citations omitted). Reportedly, "[i]t is common practice for a convert to change his name as the Koran provides, and the former Anglo name is thought to be a badge of a spiritually unenlightened state and a relic of slavery." *Id*. (internal citation omitted).

outweighed the state's interest in excluding new names from its files and internal lists. *Salaam*, 905 F.2d at 1171-1174; *see also Barrett v. Virginia*, 689 F.2d 498, 503 (4th Cir.1982). The state was required to "reform its record keeping only to the extent necessary to allow Salaam to receive services and information in his new name within the prison." *Id.*, 905 F.2d at 1170. Significantly, the Eighth Circuit did not order the state to change its designated official (or committed) name for Salaam or require that the state prison recognize the new name for all purposes.

*Salaam* relies in part on the Fourth Circuit's *Barrett v. Virginia* decision. *See Salaam*, 905 F.2d at 1174 (citing *Barrett v. Virginia*, 689 F.2d 498, 503 (4th Cir.1982)). The Fourth Circuit held in *Barrett* that a Virginia state prison's refusal to deliver mail addressed to a prisoner under his legal religious name constituted a viable First Amendment claim. *Barrett*, 689 F.2d at 503. In *Barrett*, a Virginia statute implementing a blanket prohibition on inmates from obtaining a legal name change was the subject of the litigation. *See Barrett*, 689 F.2d at 499-500 (citing Va.Code Ann. § 8.01-217 (Cum.Supp.1982)). Barrett had been unable to obtain a legal name change under Virginia law. Thus, Barrett's eligibility to pursue a name change under state law was at issue. According to the Fourth Circuit, the Virginia state law prohibiting legal name changes for inmates, without exception, and notwithstanding any good cause showing, was unreasonable. *Barrett*, 689 F.2d at 503.

In *Hakim v. Hicks*, the Eleventh Circuit approved of the Florida Department of Correction's dual-name system which called for the use of a commitment name in conjunction with a legal religious name. *Hakim v. Hicks*, 223 F.3d 1244, 1246-49 (11th Cir.2000). Hakim had already legally changed his name via Florida law but was denied any relief within the state

correctional facility. *Hakim*, 223 F.3d at 1248. The Eleventh Circuit noted that the cases in this area consistently support the following propositions:

> First, an inmate has a First Amendment interest in using his religious name, at least in conjunction with his committed name. Second, an inmate cannot compel a prison to reorganize its filing system to reflect the new name. ***Third, in states where inmates are allowed to change names legally, prisons are generally required to recognize only legally changed names***.

*Hakim*, 223 F.3d at 1248 (agreeing with the Ninth Circuit's synthesis of the case law; quoting *Malik v. Brown*, 71 F.3d 724, 727 (9th Cir.1995) (emphasis added)). This Defendant is currently incarcerated in the State of Colorado, specifically, U.S. Penitentiary Florence-Admax, Florence, Colorado.[5]

While Defendant, a federal prisoner, asks this Court to direct the Bureau of Prisons to recognize Defendant's new Islamic name, Defendant does not allege that his name has been legally changed pursuant to state law.[6] Rather, Defendant asserts that this federal sentencing court has the authority to legally change Defendant's name.[7] (Motion, 3). While the undersigned district judge, as the sentencing judge for this Defendant, may have the ability to *request* that the BOP recognize Defendant's new Islamic name, it is not at all clear that this federal court, even under its inherent authority, can legally effect a name change.

---

[5] The undersigned judge is not familiar with Colorado state law and whether Colorado permits inmates to legally change their names in circumstances such as these.

[6] *Salaam, Barrett*, *Ali* and *Hakim* all involved claims brought by state prisoners housed within state correctional facilities.

[7] Within the "Conclusion" of his motion, Defendant requests that this federal sentencing court grant the requested relief "BY LEGALLY CHANGING [DEFENDANT'S] NAME IN THE JUDGEMENT[SIC] AND COMMITMENT ORDER FROM: CHRISTOPHER WAYNE BOWMAN, TO: HAMZAH ABDULLAH IBN-DAWUD AS-SALAFI." As previously noted, Defendant is operating on the premise: "Should you wish to correct your committed name, you must contact the sentencing court and have them issue a name change." (Motion, Exh. D).

**IT IS, THEREFORE, ORDERED** that Defendant's motion to change his "committed name" to "Hamzah Abdullah Ibn-Dawud As-Salafi" is hereby **GRANTED in part and DENIED in part**. (Docs. 191, 195). Defendant's motion seeking to replace or substitute his "committed name" is **DENIED**. However, to the extent Defendant requests that this Court (and the BOP) recognize *both* his committed name and his newly adopted Islamic name by adding (a/k/a "Hamzah Abdullah Ibn-Dawud As-Salafi") in parentheses under his committed name, Defendant's motion is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's motion to expedite is **DENIED as moot**. (Doc. 192).

Signed: June 12, 2013

Richard L. Voorhees
United States District Judge